## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

_____

|  |  |  |
|---|---|---|
| **JAMES FREELS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 08-2580-STA** |
| **COUNTY OF TIPTON, TENNESSEE,** | ) | |
| **TIPTON COUNTY SHERIFF'S** | ) | |
| **DEPARTMENT, J.T. "PANCHO"** | ) | |
| **CHUMLEY, BOB BEANBLOSSOM,** | ) | |
| **CLARK DUNLAP, and GERALD** | ) | |
| **SPENCER;** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
_____

Before the Court is Defendants Tipton County, Tennessee, J.T. "Pancho" Chumley, Clark

Dunlap, Gerald Spencer and Bob Beanblossom's Motion for Summary Judgment (D.E. # 54)

filed on April 1, 2010.  Plaintiff James Freels filed a response in opposition to Defendants'

Motion (D.E. # 58) on May 17, 2010.  For the reasons set forth below, Defendants' Motion is

**GRANTED**.

### BACKGROUND

The following are undisputed for purposes of this Motion unless otherwise noted.

Plaintiff James Freels has been engaged in a property line dispute with his neighbors for

several years.  Defs.' Statement of Undisputed Facts ¶ 1.  As a result, on or around October 8,

2007 and October 11, 2007, the Tipton County Sheriff's Department was called to his and his

neighbor's residences. *Id*. at ¶ 2.  During each of these incidents, the Plaintiff was advised that an incident report would be available at the Sheriff Department's office if he wished to obtain a copy. *Id*. at ¶ 3.

On October 12, 2007, the Plaintiff went to the Sheriff Department's office to obtain a copy of the previous days incident reports. *Id*. at ¶ 4.  The Tipton County Sheriff's Department is located in the Tipton County Justice Center, which also houses the Tipton County jail. *Id*.[1] Upon arriving at the Sheriff's Department, the Plaintiff spoke with Defendant Deputy Robert Beanblossom. *Id*. at ¶ 5.  Deputy Beanblossom assisted the Plaintiff in obtaining copies of the incident reports. *Id*.  The Plaintiff also informed Deputy Beanblossom that he wished to swear out a criminal warrant against his neighbor. *Id*. at ¶ 6.  Deputy Beanblossom informed him that he would need to go to the court clerk's office to initiate a criminal warrant. *Id*.  As such, the Plaintiff proceeded to the clerk's office. *Id*. at ¶ 7.

Upon arriving at the clerk's office, the Plaintiff asked one of the employees in the clerk's office what was required to initiate a criminal complaint. *Id*. at ¶ 8.  During the course of this conversation, the Plaintiff identified himself by name. *Id*. at ¶ 9.  Another employee in the clerk's office recognized Plaintiff's name as one with a criminal complaint issued against it. *Id*. at ¶ 10.  The Plaintiff's neighbor had sworn out a warrant for Plaintiff's arrest alleging vandalism and harassment. *Id*. at ¶ 11.  Recognizing the name, the employee telephoned the Sheriff's Department to advise them that a person with an active warrant was located in their office. *Id*. at ¶ 12.

_____

[1] The Defendants note that the General Sessions Count, Circuit Court, Chancery Court, and the clerks office for each court are also located in the Tipton County Justice Center.  Defs.' Statement of Undisputed Facts ¶ 4.

Deputy Beanblossom received the call, and he, Chief Deputy Clark Dunlap, and Deputy Jay Rodriguez proceeded to the clerk's office. *Id*. at ¶ 12. Upon arriving at the clerk's office, the deputies contend that they advised Plaintiff that there was a warrant for his arrest and that they needed to take him into custody. *Id*. at ¶ 13. The Plaintiff, however, contends that he was not advised of the pending arrest warrant until after he was restrained in handcuffs. *Id*. at ¶ 14. The Defendants further assert that Plaintiff would not comply with their verbal commands and exercised some resistance to being placed in handcuffs. *Id*. at ¶ 15,17. The Plaintiff, however, disputes this fact and asserts that at no time did he resist the deputies commands or behave in a non-cooperative manner.

At the time of his arrest, the Plaintiff had a large wooden walking cane in his possession. *Id*. at ¶ 18. The deputies viewed this walking cane as a potential weapon, and thus seized it from Plaintiff for their personal safety. *Id*. The Plaintiff admits that he had a walking cane in his possession at the time of the arrest, but he asserts that he advised the deputies that he would not be able to walk without it since he was an amputee.

The Plaintiff was then escorted from the clerk's office to the Tipton County jail. *Id*. at ¶ 19. During the course of this walk, the Plaintiff advised the deputies that he had a prosthetic leg and that he was having difficulty walking without his walking cane. *Id*. at ¶ 20. In response, the deputies placed their hands on Plaintiff's upper arms and shoulders so that he could maintain his balance. *Id*. The Plaintiff disagrees with the Defendants characterization of his trip from the clerk's office to the Tipton County jail. The Plaintiff contends that he was dragged to the jail, rather than escorted.

The Defendants contend that at no time during the interaction between Deputy

Beanblossom, Deputy Dunlap or Rodriguez and Plaintiff did the deputies exert any force upon Plaintiff other than to place him in handcuffs and offer him assistance walking. *Id*. at ¶ 21.  The Plaintiff adamantly disputes this fact.  He asserts that he was attacked by the deputies prior to being informed that there was an arrest warrant pending against him.  More specifically, the Plaintiff contends that he was shoved by the deputies which caused his prosthetic leg to break. The Plaintiff also asserts that he almost fell on the floor of the clerk's office, but he caught himself by grabbing the counter.  He further contends that he informed the deputies that he could not use his prosthetic leg with his hands bound behind his back in handcuffs.

The Defendants note that none of the deputies raised their voices towards the Plaintiff during the course of his arrest.  *Id*. at ¶ 22.  The Plaintiff, however, contends that he was forcibly told to shut up when he asked what he was being arrested for.  The Defendants contend that the Plaintiff did not inform the deputies that he suffered any injury or was in any pain during the course of the arrest.  *Id*. at ¶ 24.  The Plaintiff did, however, inform the deputies of an old shoulder injury.  *Id*.  The Plaintiff asserts that he informed the deputies that his shoulder was hurting.

Ultimately, the Plaintiff was brought to the booking/intake area of the Tipton County jail, and he was transferred to the custody of the corrections officers on duty.  *Id*. at ¶ 25.  The time between Plaintiff's arrest and the time he was released into the custody of the corrections officers only spanned a few minutes.  *Id*. at ¶ 26.  During that short time period, the deputies did not advise Plaintiff that he had the right to remain silent or question him.  *Id*.  Nor did the Plaintiff  make any incriminating statements.  *Id*. at ¶ 27.  The Plaintiff does not dispute that he did not make incriminating statements but rather notes that he had conversations with the

4

deputies during this time.

Deputies Dunlap, Beanblossom and Rodriguez had no further contact with the Plaintiff after he was brought to the booking/intake area of the jail.  *Id*. at ¶ 28.  Additionally, Sheriff Chumley and Deputy Gerald Spencer had no personal involvement with Plaintiff's actual physical arrest or his detention.  *Id*. at ¶ 39.

Once the Plaintiff was booked into the jail, he was advised that he had a $1,000.00 bond. *Id*. at ¶ 29.  Adjacent to the booking/intake area is a multi-purpose room that has a window through which jail personnel can observe persons in the room.  *Id*. at ¶ 31.  Plaintiff was placed in the multi-purpose room following his booking until he posted bond.  *Id*. at ¶ 32.

While he was waiting in the multi-purpose room, the Plaintiff did not have to use the restroom.  *Id*. at ¶ 35.  The multi-purpose room does not contain restrooms, but there are ADA compliant restrooms in the vicinity according to the Defendants.  *Id*. at ¶ 33.  A corrections officer will escort the detainee to the restroom in the event such action is required.  *Id*.

Plaintiff posted bond and was released within three or four hours of his arrest.  *Id*. at ¶ 36. The criminal charges that were brought against Plaintiff were dismissed and expunged upon Plaintiff's request.  *Id*. at ¶ 37.

The Defendants assert that all full-time Tipton County Sheriff's Department deputies are certified by the Police Officer Standards and Training Commission (POST), and must successfully complete law enforcement officer training at the Tennessee Law Enforcement Training Academy.  *Id*. at ¶ 38.  For instance, Deputies Dunlap and Rodriguez were POST certified at the time of Plaintiff's arrest.  *Id*.  Deputy Beanblossom was a sworn and bonded reserve deputy.  *Id*.  Part of the POST certification requirements and training involve the proper

techniques for effecting a physical arrest of a suspect.  *Id*. at ¶ 41.  Deputies are also trained to

use an amount of force no greater than necessary to effect an arrest.  *Id*. at ¶ 42.  Plaintiff's arrest

was consistent with Deputies Dunlap and Beanblossom's training.  *Id*. at ¶ 43.

Deputies are also trained to advise a suspect of his right to remain silent or to not give an

incriminating statement before the suspect is questioned or interrogated.  *Id*. at ¶ 44.  The Tipton

County Sheriff's Department does not require its deputies to advise a suspect of his right to

remain silent at the time of his arrest.  *Id*.  Such warnings are typically not administered until

prior to the suspect being questioned.  *Id*.

Additionally arrestees are usually informed of the reason why they have been arrested.

*Id*. at ¶ 45.  This is accomplished by either verbally informing the suspect or, if there is an arrest

warrant or other charging instrument, by providing a copy of that document to the arrestee.  *Id*.

The Plaintiff contends this procedure was not followed during his arrest.  More specifically, the

Plaintiff asserts that he was provided with a copy of the arrest warrant, but he could not read it

because he did not have his glasses on.  He also contends that the deputies refused to advise him

of his rights at the time of his arrest.

In his Complaint, Plaintiff asserts state law tort claims of assault, battery, negligence, and

intentional infliction of emotional distress against the Defendants.  Plaintiff also asserts

violations of the Americans with Disabilities Act (ADA) and 42 U.S.C. § 1983 for excessive

force, failure to receive *Miranda* warnings, and failure to be advised of the charges against him.

In the instant Motion before the Court, the Defendants first assert that Defendants Dunlap

and Beanblossom are entitled to qualified immunity because their actions in effectuating

Plaintiff's arrest were objectively reasonable.  More specifically, Defendants contend that the

only force they used during the course of Plaintiff's arrest was placing him in handcuffs and helping him walk from the clerk's office to the jail.  Under these circumstances, the Defendants contend their actions were objectively reasonable.

Second, Defendants Chumley and Spencer argue that they were not personally involved in Plaintiff's arrest and thus can not be held liable for any alleged constitutional violation that may have occurred.  Third, Defendant Tipton County asserts that the Plaintiff has failed to proffer evidence to indicate that its policies, practices, or customs were the moving force behind Plaintiff's alleged constitutional deprivations.  Fourth, Defendant Tipton County contends that Plaintiff can not make out his ADA claims because he was not denied the benefits or services of a public entity because of his disability.  Finally, the Defendants contend that the Court should decline to exercise supplemental jurisdiction over Plaintiff's various state law tort claims.

In response in opposition to Defendants' Motion, the Plaintiff first contends that he was attacked by the deputies prior to being placed in handcuffs and that he was dragged from the clerk's office to the jail.  As such, he asserts the force that Deputies Dunlap and Beanblossom used in effectuating his arrest was not objectively reasonable, and thus they are not entitled to qualified immunity.  Second, the Plaintiff asserts that his Sixth Amendment right to be informed of the nature of the charges against him was violated because the deputies never told him what he was charged with.  Third, the Plaintiff contends that the deputies violated his Fifth Amendment right to be free from self-incrimination.  More specifically, the Plaintiff asserts that he was never advised of his *Miranda* rights during the course of his arrest or detention.

Fourth, the Plaintiff contends that both Defendants Chumley and Tipton County are liable for violations of 42 U.S.C. § 1983 and the ADA.  The Plaintiff asserts that the deputies used

7

excessive force in handcuffing him, an amputee, in violation of 42 U.S.C. § 1983.  He notes that

as an amputee he had difficulty walking with his hands restrained behind his back.  Therefore,

the handcuffs constituted excessive force under the circumstances.  Plaintiff also asserts that the

Defendants failed to make a reasonable accommodation, i.e. removing the handcuffs, in violation

of the ADA.   Finally, the Plaintiff contends that Defendant Spencer was involved in his arrest

because his name appears on the arrest warrant.  The Plaintiff does not brief his state law claims.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a

judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving party is entitled
to a judgment as a matter of law.[2]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most

favorable to the nonmoving party.[3]  When the motion is supported by documentary proof such as

depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must

present some "specific facts showing that there is a genuine issue for trial."[4]  It is not sufficient

"simply [to] show that there is some metaphysical doubt as to the material facts."[5]  These facts

must be more than a scintilla of evidence and must meet the standard of whether a reasonable

juror could find by a preponderance of the evidence that the nonmoving party is entitled to a

---

[2] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Celotex*, 477 U.S. at 324.

[5] *Matsushita*, 475 U.S. at 586.

8

verdict.[6]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[7]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[9]  Finally, the "judge may not make credibility determinations or weigh the evidence."[10]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[11]

## ANALYSIS

### I. Tennessee State Law Claims

Plaintiff has alleged a series of causes of action sounding in tort under the GTLA including claims for assault, battery, intentional infliction of emotional distress, and negligence

---

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7] *Id*. at 251-52 (1989).

[8] *Celotex*, 477 U.S. at 322.

[9] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[10] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[11] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

against Deputies Dunlap and Beanblossom.[12]  State law claims against governmental entities and their employees are governed by the GTLA.[13]  Ordinarily, state law claims would give this Court supplemental jurisdiction because they arise out of the same facts and form part of the same case or controversy.[14]  However, GTLA claims must be brought in "strict compliance" with the terms of the state statute.[15]  The GTLA confers on the state circuit courts exclusive original jurisdiction over claims brought pursuant to its provisions.[16]

A federal district court may, in its discretion, decline supplemental jurisdiction over a state law claim, even if jurisdiction would otherwise be proper under § 1367(a).  Section 1367(c)(4) allows a district court to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."[17]  The Sixth Circuit has affirmed the dismissal of GTLA claims, because "the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts.  This unequivocal preference of the Tennessee legislature is an

---

[12] The Court notes that the Plaintiff has not briefed his state law claims in his response to the instant Motion.  Additionally, in Plaintiffs Complaint he does not specifically identify which Defendants he asserts his state law claims against.  For instance, as to his assault and battery claim, Plaintiff makes reference generally to "officers of the Tipton County Sheriff's Department" and "Defendants."  However, the Court assumes that Plaintiff's general references are references to deputies Dunlap and Beanblossom, the deputies involved in effectuating his arrest.

[13] *See* Tenn. Code Ann. § 29-20-101, *et. seq*.

[14] *See* 28 U.S.C. § 1367(a).

[15] Tenn. Code Ann. § 29-20-201(c).

[16] Tenn. Code Ann. § 29-20-307.

[17] 28 U.S.C. § 1367(c)(4).

10

exceptional circumstance for declining jurisdiction."[18]  Therefore, the Court declines to accept

jurisdiction over Plaintiff's claims brought pursuant to the GTLA in accordance with 28 U.S.C. §

1367(c)(4).[19]  Because the Court declines to accept jurisdiction over these state claims, they are

dismissed without prejudice.

## II.  Official Capacity Claims Against All Defendants

Plaintiff has alleged that the acts of Sheriff J.T. "Pancho" Chumley, Deputy Spencer,

Deputy Dunlap, and Deputy Beanblossom were undertaken in their official capacities as

employees of Tipton County.  The Defendants note that such official capacity claims are

essentially claims against Tipton County.  The Court agrees.  "[I]ndividuals sued in their official

capacities stand in the shoes of the entity they represent."[20]  When government employees like

Sheriff Chumley, Deputy Spencer, Deputy Dunlap, and Deputy Beanblossom are sued in their

official capacities, the action "is equivalent to a suit against" Tipton County.[21]  Therefore,

summary judgment is warranted as to all claims against Sheriff Chumley, Deputy Spencer,

Deputy Dunlap, and Deputy Beanblossom in their official capacities with the Tipton County

Sheriff's Department.

---

[18] *Gregory v. Shelby County, Tennessee*, 220 F.3d 433, 446 (6th Cir. 2000).  *See also Maxwell v. Conn*, 893 F.2d 1335 (6th Cir. 1990)(stating that the GTLA's grant of exclusive jurisdiction to the state courts "belie[d]" plaintiff's argument that he could expect to try the GTLA claims in the same proceeding as his federal claims).

[19] *See Corner v. City of Jackson, Tenn.*, 669 F.Supp. 2d 886, 892-93 (W.D. Tenn. 2009).

[20] *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003)(citing *Kentucy v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

[21] *Knott v. Sullivan*, 418 F.3d 561, 574-75 (6th Cir. 2005).

### III.  42 U.S.C. § 1983 claims

#### A.  Respondeat Superior

The Defendants note that § 1983 liability cannot be imposed under a theory of *respondeat superior*; proof of personal involvement is required.  The Defendants assert that neither Sheriff Chumley nor Deputy Spencer were personally involved in Plaintiff's arrest and thus summary judgment is required in their individual capacities.  In contrast, the Plaintiff contends that Sheriff Chumley was involved in his arrest because he is "the policymaker for the Tipton County Sheriff's Department."  Plaintiff also asserts that Deputy Spencer was personally involved in his arrest because his name appears on his arrest warrant.

As the Defendants correctly point out, § 1983 liability cannot be imposed under a theory of *respondeat superior*. Proof of personal involvement is required for a supervisor to incur personal liability.[22]  "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."[23]

Here, the crux of Plaintiff's excessive force claim seems to be focused on his handcuffing.  In his declaration, Sheriff Chumley noted that "[i]t is the policy at the Tipton County Sheriff's Department that, absent special circumstances, all arrestees are placed in handcuffs until they are secured in the booking/intake area of the Tipton County jail."[24]  Plaintiff contends this statement "clearly establishes himself as the policymaker for the Tipton County

---

[22] *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008).

[23] *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

[24] Chumley Decl. ¶ 7, Apr. 1, 2010.

Sheriff's Department" and as such imposes individual liability upon him.[25]  The Court, however, disagrees.

Defendant Chumley was not personally involved in the alleged actions.  In fact, Defendant Chumley did not participate in Plaintiff's arrest at all.[26]  While it is true that Defendant Chumley as Tipton County Sheriff may be considered a policymaker for purposes of liability in his official capacity, his position alone does not equate to liability in his individual capacity.  As noted above, to succeed under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation.  Here, Plaintiff has failed to make this showing and as such summary judgment is appropriate in Defendant Chumley's individual capacity.  Thus, Defendants' Motion as to this claim is **GRANTED**.

The Plaintiff also asserts that Defendant Spencer should be held individually liable for the alleged constitutional violations.  More specifically, Plaintiff asserts that Defendant Spencer was personally involved in his arrest because he was the officer that requested the arrest warrant and made the probable cause determination.  Plaintiff also alleges that Defendant Spencer failed to conduct a proper investigation into his neighbor's harassment allegations.

Here, the Plaintiff alleges that his civil rights were violated during the course of his arrest because (1) the deputies used excessive force in violation of the Fourth Amendment, (2) he had a Sixth Amendment right to be informed of the nature of the charges against him, and (3) he had a Fifth Amendment right to be free from self incrimination.  The Court notes that none of these allegations in any way directly involve Plaintiff's underlying arrest.

---

[25] Pl.'s Resp. to Defs.' Mot. for Summ. J., 11.

[26] Chumley Decl. ¶ 5.

As the Court noted above, at a minimum, the Plaintiff must show that a supervisory official, such as Defendant Spencer, at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.  Here, Plaintiff has failed to make such a showing.  The Plaintiff does not allege that Defendant Spencer was physically present at the scene of his arrest or that he authorized the deputies actions after the fact.  Instead, Plaintiff merely asserts that: (1) Defendant Spencer's name appears on the face of his arrest warrant[27]; (2) he was the party responsible for making the probable cause determination, and (3) Defendant Spencer failed to conduct a proper investigation.  While all of these allegations may go towards attacking the validity of Plaintiff's arrest, none of them support Plaintiff's position that Defendant Spencer was "personally involved" in the alleged constitutional violations.  As such, summary judgment as to Defendant Spencer in his individual capacity is **GRANTED**.

### B.  Unreasonable Force Claims Against Deputies Dunlap and Beanblossom

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws."[28]  In order to prevail on such a

---

[27] The Court notes that the "Affidavit of Complaint" attached to Plaintiff's Complaint as Exhibit B states: "Karen McMahan told Capt. Spencer that her neighbor James Freels began destroying a portion of fence that belongs to Karen McMahan.  This has been an on going thing where Mr. Freels has hung toilet seats on the McMahan's fence, he shoots bottle rockets at her horses, plays music at odd hours of day and night, shoots a cannon and has a sign with a middle finger and a eye with a middle finger with Letters BCU pointed toward the McMahan property. He has killed grass four feet on the McMahan property."  The Court notes this one reference is the only time Defendant Spencer's name appears on the Affidavit of Complaint or the Arrest Warrant which are included in one document.  *See* Exhibit B to Complaint.

[28] 48 U.S.C. § 1983.

14

claim, a § 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law."[29]  "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred."[30]

Government officials, including police officers, are immune from civil liability unless, in the course of performing their discretionary functions, they violate the plaintiff's clearly established constitutional rights.[31]  In other words, a "defendant enjoys qualified immunity on summary judgment unless the facts alleged and evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established."[32]  The defense of qualified immunity "ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were [ ]lawful."[33]  When qualified immunity is asserted, the plaintiff bears the burden of showing that the defendants are not entitled to that defense.[34]  Specifically, the plaintiff "must show both that, viewing the evidence in the light most favorable to her, a constitutional right was violated and that the right was clearly established at

---

[29] *Wittstock v. Mark A. Van Sile, Inc*., 330 F.3d 899, 902 (6th Cir. 2003).

[30] *Humes v. Gilless*, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

[31] *Hills v. Kentucky*, 457 F.3d 583, 587 (6th Cir. 2006).

[32] *Jefferson v. Lewis*, 594 F.3d 454, 459-60 (6th Cir. 2010) (citations omitted).

[33] *Chappell v. City of Cleveland,* 585 F.3d 901, 907 (6th Cir. 2009) (citing *Pearson v. Callahan,* 129 S.Ct. 808, 815 (2009)).

[34] *Chappell*, 585 F.3d at 907.

the time of the violation."[35]

The Supreme Court has explained, "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat of force thereof to effect it."[36] "All claims that law enforcement officers have used excessive force-deadly or not ... should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[37] The Court must apply "the objective reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight."[38] Such factors include (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.[39] "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation."[40] Further, the Court conducts the reasonableness inquiry objectively, based on the "information possessed" by the officer, without regard to the officer's subjective beliefs and without regard to facts not known by the officer at the time of the

---

[35] *Id.*

[36] *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

[37] *Floyd v. City of Detroit,* 518 F.3d 398, 405 (6th Cir. 2008) (*Graham,* 490 U.S. at 395).

[38] *Jefferson*, 594 F.3d at 461 (citations omitted).

[39] *Graham,* 490 U.S. at 396.

[40] *Id.* at 396-97.

16

incident.[41]

The Court holds that Deputies Dunlap and Beanblossom are entitled to qualified immunity from Plaintiff's § 1983 claims because Plaintiff cannot show that the deputies violated his Fourth Amendment right to be free from the use of unreasonable force.  According to his brief, Plaintiff bases his excessive force claim on the following theories: (1) that he has a constitutional right to be free from "physical attack" prior to arrest; (2) that he has a constitutional right to be free from "shoving," and (3) that he has a constitutional right to be free from handcuffing.

Based on the record before the Court, Plaintiff cannot make any of these showings.  Each deputy has submitted a declaration in support of the Motion for Summary Judgment stating his version of events.  The Plaintiff has not submitted his own declaration but has submitted portions of his deposition testimony.  Viewing this evidence in the light most favorable to Plaintiff, Plaintiff cannot establish that the deputies violated his constitutional rights.  When assessing the reasonableness of a law enforcement officer's actions, the Court must analyze the seizure or arrest in segments.[42]  Therefore, the Court will consider each of Plaintiff's allegations of excessive force as they occurred on October 12, 2007.

### *1. Attack & 2. Shove*

Plaintiff asserts that he was "attacked prior to being informed that they [the deputies] were seeking to arrest him."  As an initial matter, the Court notes that Plaintiff's brief does not identify which deputies engaged in his attack or what actions constituted such an attack.  In fact,

---

[41] *Anderson v. Creighton,* 483 U.S. at 641.

[42] *Morrison v. Board of Trustees of Green Tp.*, 583 F.3d 394, 401 (6th Cir. 2009).

the Plaintiff fails to provide any elaboration in his brief beyond asserting that he was "attacked."

In his deposition, Plaintiff described his attack as follows:

Q.  Okay.  Could you explain what that contact was?[43]

A.  Well, they attacked me and shoved me toward the counter.  My arm was – my right arm went up behind me above my shoulder, and I braced myself because my prosthetic limb, I could not control it, you know.  I help my – kept - grabbed the counter with my left hand to keep my head from hitting the counter.[44]

The Plaintiff also testified that "Chief Dunlap was the main man that hit me."[45]  Deputy Dunlap and Deputy Beanblossom's declarations, in contrast, make no mention of an "attack" on the Plaintiff.  Instead, the deputies assert they had no contact with Plaintiff other than to place him in handcuffs and assist him in walking to the jail.[46]  Additionally, Gail Alsbrook, a Chief Deputy Clerk of the Tipton County Circuit Clerk, and Connie Faye, a Deputy Clerk of the Tipton County General Sessions Court Clerk, who were present for Plaintiff's arrest provided declarations that assert Plaintiff's arrest "was uneventful and without incident."[47]

Although the Court is required to engage in a segmenting analysis as it noted above, here Plaintiff's "attack" and "shove" claims seem to be interrelated, if not one and the same.  As such, the Court will analyze the reasonableness of these claims together.

The Plaintiff contends that his version of the events that occurred on October 12, 2007 differ greatly from that of the deputies.  As such, the Plaintiff asserts that genuine issues of

---

[43] Freels Dep. 139:14-15 (Dec. 2, 2009).

[44] Freels Dep. 139: 16-22.

[45] Freels Dep. 78:23-24.

[46] Beanblossom Decl. ¶ 14, (Apr. 1, 2010); Dunlap Decl. ¶ 7, (Apr. 1, 2010).

[47] Alsbrook Decl. ¶ 12, Apr. 1, 2010; Faye Decl. ¶ 12, Apr. 1,2010.

material fact remain, and therefore summary judgment is inappropriate in this case.  The Plaintiff

posits that any other outcome would require this Court to make an inappropriate credibility

determination.

Admittedly, the Court is not permitted to make credibility determinations at this stage.

The Court also notes that the Sixth Circuit has held in the context of qualified immunity that:

> [s]ummary judgment would not be appropriate if there is a factual dispute (i.e. a genuine
> issue of material fact) involving an issue on which the question of immunity turns, such
> that it cannot be determined before trial whether the defendant did acts that violate
> clearly established rights.[48]

The Court's key determination is therefore whether Plaintiff's testimony is sufficient to create a

genuine issue of material fact regarding whether the attack and shoving that occurred were

delivered with excessive force.  Viewing the evidence in the light most favorable to the Plaintiff,

the Court finds that the Plaintiff has not done so.

Plaintiff asserts that he was "attacked" and then "shoved" by the deputies prior to being

handcuffed and informed that he was under arrest.  The record before the Court is void of any

specific description of which of the deputies' actions Plaintiff contends constituted the "attack"

other than his description of the "shoving" and his subsequent reaction.  As such, the Court must

assume that Plaintiff's contention that he was (1) shoved towards the counter, (2) that deputy

Dunlap grabbed his arm, and (3) that he fell forward and braced himself with his left hand are the

actions which Plaintiff contends constituted "the attack."

The Supreme Court and the Sixth Circuit have repeatedly noted in excessive force cases

that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's

---

[48] *Jackson v. Hoylman*, 933 F.2d 401, 402 (6th Cir. 1991).

chambers, violates the Fourth Amendment."[49]  Applying the *Graham* factors, Plaintiff was

arrested for harassment, a misdemeanor offense.  There is no evidence that he posed a threat to

the deputies or that he was actively attempting to resist arrest.  The Court does note, however,

that Deputy Beanblossom stated in his declaration that "Mr. Freels offered some resistance as I

placed him in handcuffs."[50]  The Plaintiff, however, adamantly contends that he offered no

resistence during the course of his arrest.  Viewing every inference in favor of the Plaintiff, the

Court must assume at this stage that the Plaintiff did not offer such resistance.

Even taking into consideration that Plaintiff's arrest was for a misdemeanor offense, he

did not pose a threat to the officers, and that he did not resist arrest, the Court finds that the force

the deputies used was reasonable under the circumstances.  In effectuating an arrest, law

enforcement officers may use a level of force that is reasonably necessary.  This force includes

placing hands on an arrestee, even one charged with a minor offense such as a misdemeanor.

The Court also finds that some shoving, like that which occurred here, would be reasonable

under the circumstances.  Therefore, the shoving and grabbing of Plaintiff's arm did not violate

Plaintiff's constitutional rights, and Defendants Dunlap and Beanblossom are entitled to

qualified immunity on this claim.

### 3. Handcuffing

The Plaintiff also asserts that the deputies action of "handcuffing [him] with only one set

of handcuffs, which painfully restricted his movement" violated his right to be free from

---

[49] *See Goodrich v. Everett*, No. 05-6091, 2006 WL 2457086, at * 6 (6th Cir. Aug. 24, 2006)(citing *Graham*, 490 U.S. at 396.)

[50] Beanblossom Decl. ¶ 10.

excessive force.  As a general matter, the Court notes that the basis of Plaintiff's handcuffing

excessive force claim is somewhat unusual.  Here, the Plaintiff seems to assert that the deputies

action of employing handcuffs on him at all, amounted to excessive force.  Plaintiff contends that

as an amputee with a prosthetic leg the use of handcuffs made it difficult, if not impossible, to

walk without assistance.  As such, Plaintiff contends that his handcuffing for a misdemeanor

offense was excessive.  Plaintiff's claim, however, is somewhat unusual because the majority of

handcuffing cases in this context are based on law enforcement's application of the handcuffs.

More specifically, the majority of excessive force claims involving handcuffs seem to be focused

on how tightly the handcuffs are applied.[51]  Plaintiff's brief makes no mention of this type of

claim.

      As the Court acknowledged above, the Plaintiff seems to assert that based on his physical

condition, the very act of handcuffing him constituted excessive force.  More specifically, the

Plaintiff notes that "as an amputee . . . [he was placed] in a position in which he could not walk,

and the arresting officers physically drug him a distance from the clerk's office into the Tipton

County jail."

      The Court notes that Plaintiff has not provided any supporting case law nor has the Court

found any that holds handcuffs are automatically excessive in the context of a misdemeanor

arrest.  In fact in *Neague v. Cynkar*, the Sixth Circuit noted that when there is no allegation of

physical injury "the handcuffing of a person in the course of an otherwise lawful arrest fails, as a

---

[51] *See generally Morrison v. Board of Trustees of Green Township*, 583 F.3d 394 (6th Cir. 2009); *Vance v. Wade*, 546 F.3d 774 (6th Cir. 2008).

matter of law, to state a claim for excessive force."[52]  Here, the Plaintiff asserts a physical injury resulted from his handcuffing so admittedly *Neague* is not dispositive of Plaintiff's claim.  More specifically, the Plaintiff testified that all of the tendons in his right shoulder were torn as a result of the handcuffs.[53]

As to Plaintiff's handcuffing claim, the question for the Court is whether the deputies actions were "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.[54]  The Court finds that it can not examine the reasonableness of Plaintiff's handcuffing without examining the surrounding circumstances. As such, the Court will approach this analysis from a chronological perspective.

Deputy Beanblossom received a call from the clerk's office that there was a man with an active arrest warrant in their office.  As such, Deputies Beanblossom, Dunlap, and Rodriguez all walked from the Sheriff's Department to the clerk's office to place the Plaintiff under arrest for harassment.  When they arrived, taking the facts in the light most favorable to the Plaintiff, Deputy Dunlap shoved the Plaintiff, grabbed his right arm, and one of the deputies took his walking cane.  From the record before the Court, it is not clear which deputy actually seized Plaintiff's cane.  Plaintiff was then placed in handcuffs and dragged from the clerk's office to the Tipton County jail.  As noted above, Plaintiff contends the deputies decision to handcuff him was unreasonable because he had difficulty walking with his hands behind his back due to his prosthetic leg.

---

[52] *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001).

[53] Freels Dep. 96:11-12.

[54] *Graham*, 490 U.S. at 397.

22

The Court finds that handcuffing the Plaintiff was a reasonable use of force under the circumstances. First, from the record, it is not entirely clear to the Court when the deputies learned that the Plaintiff had a prosthetic leg. The record does not indicate whether Plaintiff's prosthesis was visually apparent to the deputies when they arrived in the clerk's office. The Plaintiff did testify that "I did not say nothing and they did not say nothing. I told him [Deputy Dunlap] I was an amputee."[55] However, the Plaintiff did not specify exactly when this conversation occurred during the course of his arrest. Additionally, Deputies Dunlap, Beanblossom, and Rodriguez all stated in their declarations that "Mr. Freels advised that he had a prosthetic leg and that he was having difficulty walking without his cane."[56] Thus, at some point during the course of his arrest, if not before, it is undisputed that the deputies were aware that Plaintiff had a prosthetic leg.

Second, the record is also clear that the Plaintiff at no time during the course of his arrest asked the officers not to handcuff him or to remove the handcuffs because he was having difficulty walking. For instance the Plaintiff testified that:

> Q: Did they at any time tell you that if you were cooperative that they wouldn't need to use the handcuffs?
>
> A: Sir, they put handcuffs on me, they didn't ask me nothing. They did not ask me nothing. I was treated like a - I don't know how I would say. I was treated real bad.[57]

Thirdly, there is no evidence in the record that the Plaintiff advised the deputies hat he injured his shoulder during the arrest. In fact, the only person the Plaintiff informed his shoulder

---

[55] Freels Dep. 76:5-6.

[56] Dunlap Decl. ¶ 9, Beanblossom Decl. ¶ 13, Rodriguez Decl. ¶ 9.

[57] Freels Dep. 77:3-11.

was hurting was the booking officer at the Tipton County Jail, not Deputies Beanblossom or Dunlap.  Plaintiff testified "[a]ll I said my shoulder was hurting, my wrists were hurting, and the cuffs were dug in, and the officer was booking me, he seen how the cuffs tore into my wrists."[58]  In the same deposition, however, the Plaintiff also simultaneously testified that he did not sustain any cuts or bruises during the course of his arrest.[59]  Thus, the extent of the injuries Plaintiff received from the handcuffs, if any, is somewhat unclear from the record.  Finally, the Plaintiff testified that he did not seek medical attention immediately following his release or while he was waiting to make bail at the jail.[60]  The Court notes, however, that Plaintiff did seek medical attention approximately a week after his arrest.[61]

In sum, when the deputies handcuffed Plaintiff, they knew that he had a serious medical condition involving his leg, but had no knowledge that handcuffs in conjunction with his leg condition might agitate his pre-existing shoulder injury.[62]  Additionally, during the course of Plaintiff's walk from the clerk's office to the jail, it was apparent to the deputies that Plaintiff was having difficulty walking in the handcuffs.  Plaintiff described this difficulty as "they assisted me by half dragging me and half walking me.  More or less it was dragging because my

---

[58] Freels Dep. 95:15-18.

[59] Freels Dep. 96:6-8.

[60] Freels Dep. 96:13-16.

[61] Freels Dep. 107:6.

[62] The Court notes that paragraph 24 of Defendants' Statement of Undisputed Facts indicates that the Plaintiff informed the deputies of his pre-existing shoulder injury. Defendants cite to paragraph nine of Rodriguez's declaration.  This assertion, however, seems to somewhat conflicts with Plaintiff's testimony that he didn't say anything to the deputies during his walk from the clerk's office to the jail.  The Court, however, will assume that such a statement was made since it is undisputed.

leg was dragging."[63]  Plaintiff, however, at no time requested that the handcuffs be removed or indicated that his shoulder was hurting as a result of the handcuffs application.  Under these factual circumstances, the Court finds that the deputies did not use unreasonable force in handcuffing Plaintiff.  As such, Plaintiff's constitutional rights were not violated and the deputies are entitled to qualified immunity as to this claim.

C.  *Sixth Amendment Claim*

The Plaintiff next asserts that the deputies violated his Sixth Amendment right to be informed of the nature of the charges against him because he was "never advised of the charges against him."

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be informed of the nature and cause of the accusation."[64]  This right, however, does not come into play until the government has committed itself to prosecution.[65] The Supreme Court has noted that this right attaches "at or after the initiation of adversary judicial criminal proceedings - whether by way of formal charge, preliminary hearing, indictment, information or arraignment."[66]

Here, it is undisputed that the Plaintiff was not verbally informed of the nature of the charges against him by Deputies Dunlap, Beanblossom, or Rodriguez during the time he was taken from the clerk's office to the jail.  As such, the Plaintiff contends in his brief that "[t]he

---

[63] Freels Dep. 81:17-22.

[64] U.S. Const. Amend. VI.

[65] *Burchett v. Kiefer*, 310 F.3d 937, 947 (6th Cir. 2002)(citing *Kladis v. Brezek*, 823 F.2d 1014, 1018 (7th Cir. 1987)).

[66] *Kirby v. Illinois*, 406 U.S. 682, 689 (1972).

record is clear that he was never advised of the charge against him."  This statement, however, arguably conflicts with Plaintiff's own deposition testimony.  While it is true that the Plaintiff testified that:

> I asked him, I said what's the charge, he just said shut up, the charge will be read – given to you when you get in the back.  He did not tell me what I was being arrest for or anything.[67]

The Plaintiff also testified in the same deposition that:

> Q: So at the time you were given the arrest warrant, you were not - not able to read what was on the arrest warrant?

> A: No, sir.  I could not read it, I read it when I got home.[68]

The Plaintiff did not specify at what point during the course of his detention he received a copy of the arrest warrant.  He did, however, testify that he informed one of the jail officials that he could not read the warrant because he did not have his glasses.[69]

The Supreme Court has stated that when a defendant receives a copy of the indictment against him "this gives rise to the presumption that the defendant has been informed of the nature of the charges against him."[70]  By analogy, this Court would assume that the same principle would apply when an arrestee is handed a copy of his arrest warrant such as was the case here.  The Court, however, acknowledges that Plaintiff contends that he was unable to read the warrant because he did not have his glasses.  Thus, at most, Plaintiff may have been constructively informed of the nature of the charges against him.  In short, the Court finds Plaintiff's assertion

---

[67] Freels Dep. 83:2-5.

[68] Freels Dep. 138:14-18.

[69] Freels Dep. 138:2-5.

[70] *Bousley v. United States*, 523 U.S. 614, 618 (1998).

26

that he was "never advised of the charges against him" misleading.

Regardless of this confusion, the Court's key inquiry here is whether or not the Defendants had committed themselves to prosecution of Plaintiff's case such that he was entitled to be informed of the nature of the charges against him. The Court finds that no such commitment had occurred.

In *Kladis v. Brezek*, a case cited by the Sixth Circuit in *Burchett v. Kiefer*, the Seventh Circuit noted that at the time of arrest an arrestee does not have a Sixth Amendment right to be informed of the reason for his arrest.[71] As such, Plaintiff's constitutional rights were not violated when he asked deputy Dunlap what the charges were against him, and deputy Dunlap did not tell him.

Additionally, the Plaintiff asserts that since he was being held pursuant to an arrest warrant the Defendants were committed to his prosecution, and as such he had a Sixth Amendment right to be informed of the charges against him. Plaintiff cites *Jones v. City of Jackson*, a Fifth Circuit case, for this proposition. In *Jones*, the plaintiff was held pursuant to a bench warrant, and the court held that he was entitled to be informed of the nature of the charges against him because the government was committed to his prosecution.[72] The bench warrant, however, was in relation to the plaintiff's failure to appear at sentencing for two burglary charges.[73] As such, the criminal proceedings in *Jones* were much more advanced than in the case at bar where Plaintiff was merely held on an arrest warrant.

---

[71] *Kladis v. Brezek*, 823 F.2d 1014, 1018 (7th Cir. 1987).

[72] *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000).

[73] *Id*.

The Court finds here that the Plaintiff had no Sixth Amendment right to be informed of the nature of the charges against him at the time he was arrested by the deputies.  Additionally, Plaintiff's Sixth Amendment rights were not violated when he was detained as a result of the underlying warrant because the Defendants were not "committed to his prosecution," i.e. no adversarial criminal proceeding had yet occurred.  As such, Plaintiff's constitutional rights were not violated.

### D. Fifth Amendment Claim

Additionally, Plaintiff asserts that his Fifth Amendment right to be free from self-incrimination was violated because the deputies never gave him *Miranda* warnings.

The Fifth Amendment provides: "no person shall be compelled in any criminal case to be a witness against himself . . ."[74]  *Miranda* warnings protect an individual's Fifth Amendment right against self-incrimination and only apply when an individual is taken into custody and is subject to questioning.[75]

Here, undisputedly Plaintiff was taken into custody, but he was not subject to questioning, i.e. custodial interrogation.  Plaintiff testified:

Q: Did you give them any statements concerning the -

A: I did not give them no statements whatsoever.

Q: So they didn't give you - they didn't advise you of your right to remain silent, correct?

A: They - no sir.  They didn't - they didn't read me my rights.  No sir.  They did not read my rights.

---

[74] U.S. Const. Amend. VI.

[75] *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966).

Q: But you didn't give them any statements?

A: I didn't give them no statement, no sir.[76]

In his brief Plaintiff asserts that "the record . . . shows that there were conversations with Mr. Freels and that they subjected him to a strip search in which conversations took place.  Mr. Freels had the right to know that those conversations could have been used against him." Plaintiff's deposition, however, makes no mention of any "conversation" during his strip search. Additionally, as noted above, interrogation triggers the need for a *Miranda* warning, not conversations.  Here, no such interrogation occurred.  As such, the Court finds that Plaintiff's Fifth Amendment rights were not violated.

### E. Section 1983 Claims Against Tipton County

To establish municipal liability under § 1983, the plaintiff must establish that (1) the plaintiff's harm was caused by a constitutional violation; and (2) the municipality was responsible for that violation.[77]  Municipalities are liable for harms resulting from a constitutional violation only when the injury resulted from an "implementation of [the municipality's] official policies or established customs."[78]

 "'Official policy' often refers to formal rules or understandings - often but not always committed to writing - that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently over time."[79]  A municipality can be shown to have a

---

[76] Freels Dep. 86:4-14.

[77] *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009).

[78] *Id*. (quoting *Monnell v. Dep't of Soc. Servs*., 436 U.S. 658, 708 (1978)).

[79] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).

"custom" causing constitutional violations, even if that custom was not formally sanctioned, provided that the plaintiff offers proof of policymaking officials' knowledge and acquiescence to the established practice.[80]  The plaintiff must also demonstrate " a direct causal link between the policy and the alleged constitutional violation in order to show that the municipality's deliberate conduct can be deemed the moving force behind the violation."[81]

Here, the Court has already found that Plaintiff has failed to show that his constitutional rights were violated during the course of his arrest.  An underlying constitutional violation is a prerequisite for municipal liability as noted above.  As such, Defendants' Motion for summary judgment as to the § 1983 claims asserted against Defendant Tipton County is **GRANTED**.

### IV.  *Americans with Disabilities Act Claims*

The Americans with Disabilities Act ("ADA") was enacted for the "purpose of provid[ing] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."[82]  A person is disabled under the ADA if he or she has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [has] a record of such an impairment; or [is] regarded as having such an impairment."[83]  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

---

[80] *Monell*, 436 U.S. at 690-91.

[81] *Spears*, 589 F.3d at 256.

[82] *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008)(quoting 42 U.S.C. § 12101(b)(1).)

[83] *Id*. at 532 (quoting 42 U.S.C. § 12102(2)(A)-(C)).

30

programs, or activities of a public entity, or be subjected to discrimination by any such entity."[84]

The Sixth Circuit has noted that "the phrase 'services, programs, or activities' encompasses virtually everything a public entity does."[85]  However, there are limits to the obligations imposed by Title II on public entities.[86]  For example, the ADA "does not require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens."[87]

To establish a prima facie case of discrimination under the ADA, a plaintiff must prove that:

> (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his disability.[88]

Further, the plaintiff must show that the discrimination was intentionally directed toward him in particular.[89]  If the plaintiff meets these requirements, then the burden shifts to the defendant to show that the accommodation provided was either effective, or that the accommodation sought and not provided would have resulted in a fundamental alteration of the procedures or an undue financial or administrative burden.[90]

---

[84] 42 U.S.C. § 12132.

[85] *Tucker*, 539 F.3d at 532 (citing *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998)).

[86] *Id*.

[87] *Id*. (quoting 28 C.F.R. § 35.164)(internal citations omitted).

[88] *Id*.  *See also, Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005)(same).

[89] *Tucker*, 539 F.3d at 532.

[90] *Id*. at 532-33.

In the instant Motion, the Defendants concede that the Plaintiff meets the first two elements of his prima facie case under the ADA: (1) he has a disability and (2) he is otherwise qualified.  The Defendants, however, contend that the Plaintiff has failed to proffer any evidence to indicate that he was denied benefits or subjected to discrimination solely because of his disability.

The Plaintiff asserts that based on his physical condition, handcuffing him amounted to intentional discrimination.  The Plaintiff seems to reason that (1) as an amputee with a prosthetic leg he has difficulty walking in handcuffs, (2) the Tipton County Sheriff's Department has a policy of not handcuffing arrestees under special circumstances; (3) as an amputee, he should fall within the special circumstances exception; (4) by continuing to employ handcuffs during the course of his arrest, the deputies intentionally discriminated against him because of his disability.        As an initial matter, the Court is somewhat uncertain as to the basis of Plaintiff's ADA claims.  In his Complaint, the Plaintiff alleges that (1) the Defendants failed to make a reasonable accommodation by not allowing him to use his walking cane during his arrest[91] and (2) the Tipton County jail does not have ADA compliant restrooms.[92]  These are the two bases that the Defendants brief in the instant Motion.  Curiously, however, in his response, Plaintiff makes no mention of the restroom facilities at the Tipton County jail as forming the basis of his ADA claim.  Instead, the Plaintiff seems to focus his argument on (1) his handcuffing and (2) his inability to use his walking cane during his arrest.

At this stage, the Plaintiff bears the burden to "put up or shut up" as the Court noted

---

[91] Compl. ¶¶50-52.

[92] *Id*. at ¶¶ 54-56.

above.  Since the Plaintiff has failed to even brief his assertions concerning the restroom facilities at the Tipton County jail, these allegations can not form the basis of his ADA claims. Therefore, the Court will not address these assertions any further.  This leaves Plaintiff's (1) handcuffing and (2) walking cane allegations.

As a general matter, the Court can find no case nor do the parties cite to a case that is factually similar to the one at bar.  Here, the Plaintiff alleges that he was intentionally discriminated against by the Defendants because he was not allowed to use his walking cane to help him walk from the clerk's office to the county jail and because the deputies handcuffed him even though he had trouble walking.  The Plaintiff seems to assert that a reasonable accommodation under the ADA would have been for the deputies to (1) allow him to use his walking cane and (2) not handcuff him.

In *Tucker v. Tennessee*, deaf and mute arrestees argued that the City discriminated against them in violation of the ADA by failing to provide a qualified sign language interpreter or other such reasonable accommodations during their arrest following a domestic disturbance call.[93]  Despite the plaintiffs contentions to the contrary, the court noted that the plaintiffs communicated effectively with the officers via pen and paper, and there was no evidence that a sign language interpreter would have changed the events in any way.[94]  As such the court found that the plaintiffs failed to proffer any evidence to indicate that they had been intentionally discriminated against because of their disability.[95]

---

[93] *Tucker*, 539 F.3d at 530.

[94] *Id*. at 536.

[95] *Id*.

In *Dillery v. City of Sandusky*, the plaintiff was cited for being a pedestrian in the roadway when she traveled in her wheelchair on city streets.[96]  The plaintiff brought claims against the city under Title II of the ADA alleging that the city intentionally discriminated against her by stopping her because she rode her wheelchair in the street, by failing to train its officer regarding the ADA, and by failing to reasonably accommodate her.[97]  The court found that the plaintiff could not demonstrate intentional discrimination because the city's failure "to install handicapped-accessible sidewalks and to train its employees about the ADA affects all disabled persons, not just Dillery."[98]

As noted above, to make out the third element of his prima facie case, the Plaintiff must show that he was excluded from participation in, denied the benefits of, or subjected to discrimination under the program solely because of his disability.  Here, the Plaintiff does not allege that he was denied services, programs or activities by the Tipton County Sheriff's Department because of his disability.  Therefore, the relevant inquiry for the Court is whether Plaintiff has put forth evidence to show he was intentionally discriminated against because of his disability.  The Court finds that he has not done so.

The Court notes that the factual circumstances of this case are somewhat unusual in comparison to other ADA "reasonable accommodation" cases.[99]  In most cases within this

---

[96] *Dillery v. City of Sandusky*, 398 F.3d 562, 565-66 (6th Cir. 2005).

[97] *Id*. at 566.

[98] *Id*. at 568.

[99] *See Scozzari v. City of Clare*, No. 08-10997-CB, 2010 WL 1626419, at * 24 (E.D. Mich. Apr. 21, 2010)(noting that there are two potential theories under the ADA in the context of an arrest: (1) wrongful arrest theory and (2) reasonable accommodation theory).

Circuit, arrestees seek an accommodation of an interpreter like in *Tucker* or modifications to an existing structure such as in *Dillery* in conjunction with an arrest.  Here, the Plaintiff contends that a reasonable accommodation during his arrest would have been for the deputies not to handcuff him and to let him keep his walking cane.  Even assuming that such conduct would have constituted reasonable accommodations, the Plaintiff has failed to show that he was intentionally discriminated against because of his disability.

The Plaintiff does not allege that the deputies gave any indication that their decision to take his walking cane was in any way related to his disability.  In fact, there is no evidence in the record before this Court that the Plaintiff even asked the deputies if he could keep his cane.  The Defendants, on the other hand, contend that the deputies viewed Plaintiff's cane as a potential weapon and seized it for their personal safety.[100]  Under these circumstances, the Court finds that no reasonable juror could conclude that the Plaintiff suffered intentional discrimination due to his disability because the deputies seized his walking cane, a potential weapon.

The crux of Plaintiff's ADA claim, however, seems to focus on his handcuffing.  More specifically, the Plaintiff asserts that

> [i]t is clear that the Defendants intentionally discriminated against Mr. Freels because they refused to make a reasonable accommodation because of his disability to effect his arrest.  The intent can be inferred from the fact that Sheriff Chumley stated that there are special circumstances in which arrestees are not cuffed.  Rather, than make this accommodation, the Defendants chose to drag Mr. Freels to the jail which resulted in serious injury to his shoulder.[101]

Here, the Plaintiff relies on the "special circumstances" provision of Defendant's

---

[100] Beanblossom Decl. ¶ 12.

[101] Pl.'s Resp. to Def.'s Mot. for Summ. J., 14.

handcuffing policy to support his position that his handcuffing amounted to intentional discrimination.  More specifically, as the Court previously noted, the Plaintiff seems to assert that his condition falls within the special circumstance exception and thus his handcuffing was discriminatory.  The Plaintiff, however, fails to proffer any evidence or provide the Court with any explanation as to what circumstances warrant not handcuffing an arrestee pursuant to the Tipton County Sheriff's Department policy.  At this stage, however, this is Plaintiff's burden to bear.  As such, the Court finds that the Plaintiff has failed to put forth evidence to show that his handcuffing was the product of intentional discrimination.  Therefore, Plaintiff has failed to proffer sufficient evidence to make out his prima facie case under the ADA.

Additionally, even assuming that Plaintiff were able to make out his prima facie case, the burden then shifts to the Defendants to show that the accommodations they provided to Plaintiff were effective.  In this case, Defendants have done so.  Here, the Plaintiff's ADA claims are centered on his difficulty walking from the clerk's office to the county jail without the use of his walking cane and with his hands in handcuffs.  The deputies, however, did provide Plaintiff with an accommodation to overcome this difficulty, they "placed [their] hands on Mr. Freels' upper arms and shoulders to help him maintain his balance . . ."[102]  As such, Plaintiff received assistance in walking from the clerk's office to the jail.  The Court, however, does note that Plaintiff characterizes this assistance as being "dragged."  This argument, however, seems more appropriate for Plaintiff's § 1983 claims rather than his ADA claims.  As such, since the Plaintiff has failed to make out his prima facie case under the ADA, summary judgment is **GRANTED** as to this claim.

---

[102]Beanblossom Decl. ¶ 13.

## <u>CONCLUSION</u>

For the reasons noted above, Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 9th, 2010.